UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                            )
PEAK PROPERTY GROUP, LLC          )    Case No. 20-16088-KHT
EIN: 80-0817599                   )
                                  )    Chapter 11
Debtor.                           )

## PLAN OF REORGANIZATION

Debtor and Debtor-in-Possession Peak Property Group, LLC ("Debtor") hereby proposes, pursuant to Chapter 11 Subchapter V of the United States Bankruptcy Code, the following Plan of Reorganization.

## I.  BACKGROUND AND SUMMARY OF THE PLAN

Debtor is a Colorado limited liability company formed in May 2012 that owns, manages, and leases four (4) residential properties located in California and Colorado. Susan Eliya ("Eliya") prior to the petition date managed Debtor and owned 51% of Debtor's membership interests.  Kip Korthuis ("Korthuis") owned 49% of Debtor's membership interests.

Debtor and Korthuis allege Eliya as manager of Debtor and without the knowledge, consent, or approval of Korthuis misappropriated company funds and encumbered corporate assets, resulting in over $1.8 million in damages to Debtor. Debtor in November 2018 commenced an action in Denver District Court to recover damages against Eliya, her husband Juan Crespin, and their related entities. Eliya pursuant to a June 2020 settlement agreement resigned as manager of Debtor and transferred her 51% membership interests to Korthuis.  The parties further agreed to resolve these claims through arbitration proceedings in Denver, Colorado which remain pending.

B2R Finance, L.P. ("B2R") in 2015 loaned Debtor $700,000 secured by certain real properties owned by Debtor in Florida, Nevada, California, and Colorado. USA Loans, LLC ("USA Loans") claims to be the assignee of the B2R obligation. Eliya's misconduct caused Debtor to default under the B2R loan in 2018. USA Loans commenced proceedings to foreclose upon Debtor's Colorado properties, forcing Debtor to file for bankruptcy relief on September 12, 2020 ("Petition Date") under Chapter 11 Subchapter V of the Bankruptcy Code. The United States Trustee appointed John C. Smiley as the Subchapter V Trustee on September 17, 2020.

USA Loans claims Debtor as of the Petition Date owes $672,846.63 under the B2R loan. Debtor disputes this claim, arguing that USA Loans and its predecessor-in-interest B2R failed to properly credit Debtor's account for certain payments and proceeds from sale of Debtor's properties. Debtor believes it owes USA Loans at most $210,020.86. Debtor commenced an adversary proceeding in November 2020 to determine the validity and

1

amount of the secured claim held by USA Loans. Debtor also commenced adversary proceedings against Gene Haun, Beth and Charles Harrison, and Irma Martinez on the ground liens in favor of these creditors encumbering Debtor's properties are fraudulent and subject to avoidance under Section 548 of the Bankruptcy Code.

Debtor's Plan divides creditors into eleven (11) classes. Class 1 consists of any Allowed Claims having priority under 11 U.S.C. § 507(a)(4) or § 507(a)(5). Debtor believes no Class 1 claims exist. Class 2 consists of the Allowed Claim held by USA Loans. Classes 3, 4, and 5 consist of the Allowed Claims held by Gene Haun, Beth and Charles Harrison, and Irma Martinez. Class 6 consists of the Allowed Tax Claim in favor of the City and County of Denver for 2020 property taxes. Classes 7 and 8 consist of the Tax Claims held by the Internal Revenue Service and California Franchise Tax Board. Class 9 comprises the claims held by general unsecured creditors. Class 10 comprises the general unsecured claims held by Insiders Korthuis and his brother Kim Korthuis. Class 11 consists of Debtor's Interests held by Korthuis.

Debtor seeks to confirm its Plan under the 2019 Small Business Reorganization Act codified under 11 U.S.C. §§ 1181-1195. Means to fund the Plan derives primarily from sale of Debtor's real properties as necessary to pay in full the Allowed Claims held by Class 2-9 creditors. Debtor in November 2020 contracted to sell its property located on Avenida Rubio in La Quinta, California for $340,000. The agreement is pending approval by the bankruptcy court and will net approximately $318,778 to Debtor. Debtor shall pay to USA Loans upon closing $210,020.86, the amount Debtor does not dispute it owes to USA Loans on account of its Class 2 Claim. Debtor will hold the balance of the sale proceeds in trust pending resolution of the USA Loans adversary proceeding. To the extent these funds are insufficient to pay USA Loans' Class 2 Claim in full, Debtor will sell as necessary its properties located on Holly Street Unit #221 and Holly Street #112 in Denver, Colorado and property located on Avenida Obregon in La Quinta, California. Debtor on December 4, 2020 entered into listing agreements to sell the Holly #221 and Holly #112 properties for $210,000 and $190,000, respectively and will apply the proceeds as necessary and in the priorities set forth below to pay in full Allowed Claims held by the Class 2-9 creditors. Debtor if necessary will also list the Obregon property in California for $450,00 to fund payments to Class 2-9 Claims. Debtor also shall not use rents from its properties or other cash collateral other than for taxes, HOA fees, and maintenance pursuant to an agreement to be negotiated with USA Loans.

## II. DEFINITIONS

"Administrative Claim" shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including but not limited to: (a) the actual and necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estate under 28 U.S.C. § 1930; (d) Administrative Claims for Debtor-in-Possession Financing allowed by

Final Order of the Court under § 364 of the Bankruptcy Code; and (e) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2)(A) of the Bankruptcy Code.

"Allowed Claim" shall mean a claim in respect of which a Proof of Claim has been filed with the bankruptcy court within the applicable time period of limitation fixed by court order in this case or scheduled in the list of creditors prepared and filed with the court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent, or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order. "Allowed Claim" also shall mean the amount of the Claims as determined through settlement or entry of a Final Order by the bankruptcy court in the Adversary Proceedings described below commenced by Debtor against USA Loans, LLC, Gene Haun, Beth and Charles Harrison, and Irma Martinez.

"Allowed Secured Claim" shall mean an allowed claim secured by a lien, security interest, or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be. "Allowed Secured Claim" also shall mean the amount of the Claims and the validity and priority of any lien relating thereto as determined through settlement or entry of a Final Order by the bankruptcy court in the Adversary Proceedings described below commenced by Debtor against USA Loans, LLC, Gene Haun, Beth and Charles Harrison, and Irma Martinez.

"Arbitration Proceeding" shall mean Judicial Arbiter Group, Inc. ("JAG") Case No. 20-0930A commenced in July 2020 by Debtor and Korthuis against Susan Eliya and the Arbitration Respondents.

"Arbitration Respondents" shall collectively mean Susan Eliya, Juan Crespin, and their related or affiliated entities JSC Property Group, LLC, Green Star Rising, Inc., SoCal Sun, Inc., Titan Fund IX, LLC, 5xR, LLC, Revest Capital, LLC, and Irma Martinez named as Respondents in the Arbitration Proceedings.

"Avoidance Actions" mean the interest of the Debtor's estate in any and all Claims, rights, and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent, or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise subject to equitable subordination under § 510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

"Bankruptcy Court" or "Court" shall mean the United States Bankruptcy Court for the District of Colorado.

"Cash Collateral" shall mean Debtor's cash, rents, negotiable instruments, documents of title, securities, deposit accounts, and other cash equivalents as defined under 11 U.S.C. § 363(a).

"Claim" shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, natured, unmatured, disputed, undisputed, legal, secured, or unsecured.

"Class" shall mean any Class into which Allowed Claims are classified pursuant to Article V.

"Class 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 Claims and Interests" shall mean the Allowed Claims and Interests so classified in Article III.

"Code" shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

"Confirmation Date" shall mean the date upon which the Order of Confirmation is entered by the Court.

"Debtor" shall mean Debtor Peak Property Group, LLC which is proposing this Chapter 11 Plan. Peak Property Group, LLC is a Colorado limited liability company formed on May 17, 2012. Korthuis is the sole owner and manager of Debtor.

"Disputed Claim" means any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent, or unliquidated in Debtor's schedules filed in connection with this case, or any Claim against which an objection to the allowance thereof has been interposed and as to which no Final Order has been entered.

"Effective Date of the Plan" shall mean the date on which the Order of Confirmation is entered, or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

"Final Order" shall mean an order or judgment of the bankruptcy court which shall not have been reversed, stayed, modified, or amended and as to which (a) the time to appeal from or to seek review, rehearing, or certiorari shall have expired, and (b) no appeal or petition for review, rehearing, or certiorari is pending or if appealed shall have been affirmed, or the appeal dismissed by the highest court to which such order was appealed, or if review, rehearing, or certiorari was sought, such review, rehearing, or certiorari has been denied and no further hearing, appeal, or petition for review, rehearing, or certiorari can be taken or as to which any right to appeal or to seek a review, rehearing, or certiorari has been waived.

4

"Interest" shall mean any member interest or any other instrument evidencing any ownership interest in the Debtor and any option, warrant, or right of any nature, contractual or otherwise, to acquire a member or other ownership interest in the Debtor.

"Korthuis" shall mean Kip Korthuis, sole member and manager of Debtor pursuant to that certain Assignment of Membership Interests in Peak Property group, LLC dated June 19, 2020 ("Membership Interest Assignment"). Prior to the Membership Interest Assignment, Susan Eliya owned 51% of the membership interests in Debtor and Korthuis owned 49% of the membership interests in Debtor.

"Order of Confirmation" shall mean the order entered by the bankruptcy court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"Petition Date" shall mean the date on which the voluntary petition was filed by the Debtor on September 12, 2020.

"Plan" shall mean this Plan of Reorganization, including all exhibits and schedules attached hereto or referenced herein.

"Priority Claim" means any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

"Pro Rata" shall mean the ratio of an Allowed Claim or Interest in a particular Class to the aggregate amount of all Allowed Claims or Interests in that Class.

"Professional Fees" means the Administrative Claims for compensation and reimbursement submitted pursuant to Section 330, 331, and 503(b) of the Code by a Professional Person.

"Rules" shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado Bankruptcy Courts as adopted by the court.

"Tax Claim" means any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

"Unclassified Priority Claims" shall mean Claims pursuant to Section 507(a)(1) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 123 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein.

## III. SMALL BUSINESS CHAPTER 11 REORGANIZATION

Chapter 11 of the Bankruptcy Code allows for the rehabilitation and reorganization of financially troubled entities or individuals. Chapter 11 allows debtors to retain its assets during administration of the case as a debtor-in-possession and, following confirmation of a plan, as a reorganized debtor. A Chapter 11 plan approved by the court becomes a permanent order restructuring the debtor's financial obligations and provides for the means for debtor to repay these obligations.

The plan divides creditors into classes of similarly situated creditors. Creditors of the same class must be treated in a similar fashion. Interests are also classified and treated alike. Debtor's Plan proposed herein sets forth eleven (11) classes of creditors or interest holders that are either impaired or unimpaired. A class is unimpaired if the plan leaves unaltered the legal, equitable, or contractual rights to which each creditor is entitled. Alternatively, a claimant is unimpaired if the plan provides for the cure of a default and reinstatement of the maturity date of the claim as it existed prior to the default. A class is impaired if the plan alters the legal, equitable, or contractual rights of creditors within the class.

The court set November 23, 2020 as the deadline for non-governmental creditors to file proofs of claim. Governmental creditors have until March 11, 2021 to file a proof of claim. Debtor's Plan provides that claims and interests shall be allowed only if evidenced by a timely-filed proof of claim or which otherwise appear in Debtor's bankruptcy schedules and are not scheduled as disputed, contingent, or unliquidated, unless subsequently allowed by the bankruptcy court. Creditors may ascertain whether their claims have been scheduled as disputed, contingent, or unliquidated by reviewing Debtor's schedules and any amendments thereto filed with the court or by contacting Debtor's counsel as set forth below.

Chapter 11 requires at least one impaired class of claims vote to accept the plan by a majority in number and two-thirds in amount, without including insider acceptance, of those claims of such class actually voting on the plan. Assuming one impaired class votes to accept the plan, the court may confirm a plan over its rejection by other classes if the court finds that the plan does not discriminate unfairly and is fair and equitable, with respect to each class of claims or interests impaired under the plan. 11 U.S.C. § 1129 sets forth the requirements for confirming a Chapter 11 plan. Section 1129 among other things requires the plan be in the best interest of creditors and be feasible through a showing that confirmation will not be followed by the need for further financial reorganization.

Subchapter V of Chapter 11 applies to small business debtor reorganization and modifies certain provisions generally applicable to Chapter 11 debtors. A "small business debtor" includes an individual or entity having non-contingent liquidated secured or unsecured debts as of the petition date equal to or less than $7.5 million. 11 U.S.C. § 101(51) (D) and § 1182 (as amended under the 2020 CARES Act). The United States Trustee may serve or appoint a disinterested person to serve as a trustee to perform the duties specified in 11 U.S.C. § 714(2), (5), (6), (7), and (9) and to appear and be heard with respect to matters concerning the value of property subject to a lien, confirmation or modification of the plan, sale of estate assets, and to ensure debtor timely makes plan payments. 11 U.S.C. § 1183. Only the debtor may file a plan of reorganization within ninety (90) days after the petition date unless the court for cause extends such deadline. 11 U.S.C. § 1189. Debtor's plan

must submit to the supervision and control of the Chapter 11 trustee all or such portion of debtor's future income as necessary to execute the plan. 11 U.S.C. § 1191.

The court may confirm the plan even if no impaired class of claims votes to accept the plan provided that the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests impaired under the plan and has not accepted the plan. 11 U.S.C. § 1191(b). Debtor must satisfy 11 U.S.C. § 1129(b)(2)(A) with respect to impaired secured claims. The plan is "fair and equitable" provided that debtor: (a) commits its projected disposable income in the three-years (or for such longer period not to exceed five years) beginning on the first payment due date under the plan, or (b) the value of the property to be distributed under the plan is not less than debtor's projected disposable income during the three-year plan period or such longer period as the court may determine not to exceed five years. 11 U.S.C. § 1191(c)(2). "Disposable income" means income received by the debtor and not reasonably necessary for expenses for the continuation, preservation, or operation of debtor's business. 11 U.S.C. §1191(d). Debtor also must demonstrate that: (a) debtor will be able to make all payments under the plan, or (b) there is a reasonable likelihood debtor will be able to make all payments under the plan and that the plan provides for appropriate remedies including the liquidation of non-exempt assets to protect claimants. 11 U.S.C. § 1129(c)(2).

## IV. SUMMARY OF DEBTOR'S ASSETS AND LIABILITIES

**Summary of Assets**. A summary of Debtor's assets is set forth below:

Holly #112 Property. Debtor owns residential real property located at 2700 S. Holly Street, #112, Denver, Colorado 80222 ("Holly #112 Property"). The Holly #112 Property is a condominium comprising 884 square feet with two bedrooms and one bathroom. The estimated market value of the Holly #112 Property as of the Petition Date is $138,000. HOA fees for the Property are $399 per month. The Property is leased to Rosario Escobedo and Marquis McNeal. Rental income is $1,500 per month and the lease subject to renewal will expire in April 2021. The Holly #112 Property suffered water damage from a broken pipe controlled by Denver Water. Debtor received $2,565 for these damages and repairs have been completed. USA Loans holds a first-priority deed of trust against the Property as described below. Irma Martinez holds a second-priority deed of trust against the Property.

Holly #221 Property. Debtor owns residential real property located at 2700 S. Holly Street, #221, Denver, Colorado 80222 ("Holly #221 Property"). The Holly #221 Property is a condominium comprising 913 square feet with two bedrooms and two bathrooms. The estimated market value of the Holly #221 Property as of the Petition Date is $205,333. HOA fees for the Property are $402 per month. The Property currently is not rented but Debtor expects to lease the Property to new tenants in January 2021. The prior tenants terminated their month-to-month lease and surrendered the Property to Debtor on October 10, 2020. Debtor expended $3,965.02 for new carpet, tile, paint, and other renovations since the prior tenants vacated the Property. USA Loans holds a first-priority deed of trust against the Property as described below. Irma Martinez holds a second-priority deed of trust.

Obregon Property.  Debtor owns residential real property located at 65830 Avenida Obregon, La Quinta, California 92253 ("Obregon Property").  The Obregon Property is a single-family home comprising 1,940 square feet with four bedrooms and two bathrooms. The estimated market value of the Obregon Property as of the Petition Date is $438,970. There are no HOA fees associated with the Property.  The Property is leased to Samantha Clark and Blake Muscovitch.  Rental income is $1,895 per month and the lease subject to renewal will expire in July 2021. USA Loans holds a first-priority deed of trust against the Property.  Irma Martinez holds a second-priority deed of trust.  Charles Harrison and Beth Harrison hold third and fourth-priority deeds of trust.

Rubio Property.  Debtor owns residential real property located at 52355 Avenida Rubio, La Quinta, California 92253 ("Rubio Property").  The Rubio Property is a single-family home comprising 1,504 square feet with three bedrooms and two bathrooms.  The estimated market value of the Rubio Property as of the Petition Date is $313,583.  There are no HOA fees associated with the Property.  Madeline Nava ("Nava") prior to the Petition Date entered into an agreement to purchase the Rubio Property which expired in January 2020.  Nava and Rudy Aparicio on November 19, 2020 executed an agreement with Debtor to purchase the Rubio Property for $334,000.  A motion to approve the Rubio purchase agreement is pending before the bankruptcy court and is described in more detail below.  Nava pays $1,800 per month to reside at the Rubio Property.  USA Loans holds a first-priority deed of trust against the Property.  Gene Alan Haun holds a second-priority deed of trust.

Bank Accounts, Rents, and Lease Deposits:  The value of Debtor's bank accounts on the Petition Date was $2,850.24.   Debtor maintains a debtor-in-possession account at Wells Fargo Bank with a balance of $9,954.30 as of December 14, 2020. Debtor holds a lease deposit in the amount of $1,500.  Debtor receives $5,195 gross rental income per month.  Debtor pays an 8.9% management fee per month or approximately $168.65 to Desert Cities Property Management, Inc. to manage the Obregon Property plus $801 in monthly HOA fees for the Holly #112 and #221 Properties.   Net rental income is $4,225.35.  Debtor's rental income is subject to a lien in favor of USA Loans.

Rubio Furniture and Personal Property.  Debtor owns certain furniture and other personal property located at the with a value of $2,450 as of the Petition Date.

The Arbitration Proceeding:  Debtor and Korthuis commenced the Arbitration Proceedings in July 2020 in Denver, Colorado before the Judicial Arbiter Group, Inc. ("JAG") against Susan Eliya, her husband Juan Crespin, and the other Arbitration Respondents. The Arbitration Proceeding relates back to an action commenced by Debtor and Korthuis in Denver District Court captioned *Korthuis, et al. v. Eliya, et al.*, Case No. 2018CV34332 in which Korthuis for himself and on behalf of Debtor alleged Eliya in her capacity as manager of Debtor misappropriated and fraudulently transferred to the Arbitration Respondents over $2.6 million in Debtor's assets.  Pursuant to a mediation settlement agreement dated June 11, 2020, Eliya agreed to transfer her 51% membership interest in Debtor to Korthuis and resign as manager of Debtor.  Debtor and Korthuis in exchange agreed to cap any recovery of damages against Eliya individually to $850,000.

This limitation of damages does not cap damages as to the other Arbitration Respondents. Eliya executed documents on June 19, 2020 transferring her 51% membership interest to Korthuis and resigning as manager of Debtor. The Denver District Court entered an order on July 1, 2020 approving the parties' stipulation to transfer the Denver District Court Action to JAG. Prior to the Petition Date, Debtor successfully obtained orders from the Denver District Court voiding fraudulent deeds of trust against the Holly #112 and #221Properties executed by Eliya in favor of David Hou and New Direction IRA, Inc.

Debtor's accounting experts believe Eliya and the Arbitration Respondents misappropriated $1,883,877.58 from Debtor. Eliya filed for relief under Chapter 7 of the Bankruptcy Code on July 27, 2020. *See In re Susan Amina Eliya*, United States Bankruptcy Court for the District of Colorado, Case No. 20-15060-EEB. Jeffrey A. Weinman is the Chapter 7 Trustee. The Chapter 7 Trustee determined Eliya has non-exempt assets to distribute to her creditors, including Debtor. Debtor timely filed a proof of claim in the Eliya Chapter 7 proceedings in the amount of $850,000 plus applicable statutory treble damages, interest, costs, and attorney fees. Debtor also filed a non-discharge complaint against Eliya on October 20, 2020 to except Eliya's obligations to Debtor from her Chapter 7 discharge. *See Peak Property Group, LLC, et al. v. Eliya*, United States Bankruptcy Court for the District of Colorado, Adversary Proceeding No. 20-01287-EEB. Eliya filed an answer to Debtor's non-discharge complaint on November 20, 2020.

### Summary of Liabilities.

<u>USA Loans Claim</u>. B2R on March 20, 2015 loaned approximately $700,000 to Debtor ("B2R Loan"). Korthuis and Eliya are guarantors under the B2R Loan. USA Loans purports to be the legal assignee of the B2R Loan. The B2R Loan was secured by numerous real properties owned by Debtor in Florida, Nevada, California, and Colorado. The Loan was also purportedly secured by an April 16, 2015 UCC financing statement recorded with the Colorado Secretary of State. USA Loans filed a proof of claim (Claim No. 2) on November 20, 2020 claiming $672,846.63 secured by first-priority deeds of trust against the Obregon, Rubio, Holly #112, and Holly #221 Properties. USA Loans also claims an interest in Debtor's rents and other cash collateral under the B2R Loan documents and deeds of trust encumbering Debtor's Properties pursuant to 11 U.S.C. § 363(c). Debtor disputes the USA Loans claim and commenced an adversary proceeding on November 18, 2020 to determine the validity and amount of the USA Loans claim. *See Peak Property Group, LLC v. USA Loans, LLC*, United States Bankruptcy Court for the District of Colorado, Adversary Proceeding No. 20-01309-KHT ("USA Loans Adversary Proceeding"). Debtor claims USA Loans and its alleged predecessor-in-interest B2R failed to properly credit and allocate payments made under the B2R Loan from 2015 through 2018 and particularly with respect to proceeds from the sale of Debtor's Florida and Nevada Properties. Debtor pursuant to its adversary proceeding claims it owes USA Loans at most $210,020.86 as of September 3, 2020.

<u>Haun Claim</u>. Gene Alan Haun ("Haun") and Eliya as the former manager of Debtor entered into an agreement whereby Haun loaned funds in an unknown amount to Eliya but said funds never benefited Debtor. A deed of trust dated March 1, 2015 was provided for

9

the benefit of Haun and was recorded against the Rubio Property on January 24, 2019. These transfers constitute a breach of Eliya's fiduciary duties owed to Debtor and were never disclosed to or authorized by Korthuis. The Haun lien encumbering the Rubio Property constitutes a fraudulent conveyance and is subject to avoidance under 11 U.S.C. § 548. Debtor commenced an adversary proceeding on October 22, 2020 to avoid the Haun lien. *See Peak Property Group, LLC v. Haun*, United States Bankruptcy Court for the District of Colorado, Adversary Proceeding No. 20-01289-KHT ("Haun Adversary Proceeding"). Haun failed to file a timely response to Debtor's complaint. Debtor filed a motion on December 4, 2020 to enter Haun's default.

Harrison Claims. Beth Harrison, Charles Harrison, and Eliya as the former manager of Debtor entered into an agreement whereby Charles Harrison loaned $23,320 and Beth Harrison loaned $29,680 to Eliya but said funds never benefitted Debtor. Deeds of trust dated October 4, 2013 were provided to Preferred Trust Company as custodian for the benefit of Beth and Charles Harrison and were recorded on January 24, 2019 against the Obregon Property. Charles Harrison and Beth Harrison hold third and fourth-priority liens against the Obregon Property behind a first-priority lien in favor of USA Loans and a second-priority lien in favor of Irma Martinez. These transfers constitute a breach of Eliya's fiduciary duties owed to Debtor and were never disclosed to or authorized by Korthuis. The Harrison liens encumbering the Obregon Property constitute fraudulent conveyances and are subject to avoidance under 11 U.S.C. § 548. Debtor commenced an adversary proceeding on October 22, 2020 to avoid the Harrison liens. *See Peak Property Group, LLC v. Preferred Trust Company, LLC, et al.*, United States Bankruptcy Court for the District of Colorado, Adversary Proceeding No. 20-01288-KHT ("Harrison Adversary Proceeding"). The court granted the Harrisons until December 16, 2020 to file a responsive pleading to Debtor's complaint.

Martinez Claim. Irma Martinez ("Martinez") and Eliya as the former manager of Debtor entered into an agreement whereby Martinez loaned $100,000 to Eliya but said funds never benefitted Debtor. Martinez and Eliya had a private dispute whereby Eliya fraudulently used Debtor's assets to resolve the dispute. Deeds of trust dated December 3, 2018 were provided to Martinez and were recorded on December 17, 2018 against the Holly #112 and Holly #221 Properties. Martinez holds second-priority deeds of trust against the Holly #112 and Holly #221 Properties subject to first-priority liens in favor of USA loans encumbering these Properties. An additional deed of trust dated October 10, 2015 was provided to Martinez and recorded on November 9, 2015 against the Obregon Property. Martinez holds a second-priority deed of trust against the Obregon Property subject to first-priority liens in favor of USA Loans. These transfers constitute a breach of Eliya's fiduciary duties owed to Debtor and were never disclosed to or authorized by Korthuis. The Martinez liens encumbering the Holly #112, Holly #221, and Obregon Properties constitute fraudulent conveyances and are subject to avoidance under 11 U.S.C. § 548. Debtor commenced an adversary proceeding on October 23, 2020 to avoid the Martinez liens. *See Peak Property Group, LLC v. Martinez*, United States Bankruptcy Court for the District of Colorado, Adversary Proceeding No. 20-01290-KHT ("Martinez Adversary Proceeding"). The court granted Martinez until December 27, 2020 to file a responsive pleading to Debtor's complaint.

Denver Tax Claim. The City and County of Denver, Colorado filed a proof of claim (Claim No. 5) on December 3, 2020 claiming $1,970.31 for 2020 real property taxes secured by the Holly #112 and Holly #221 Properties. $906.96 is owed with respect to the Holly #112 Property and $1,063.35 is owed with respect to the Holly #221 Property. Debtor does not dispute the property tax obligations owed to the City and County of Denver.

IRS Tax Claims. The IRS filed a proof of claim (Claim No. 1) on November 19, 2020 claiming $4,956.22 in estimated excise tax obligations, penalties, and interest for the period 2014 through 2020. The IRS claims $27.56 in priority unsecured tax claims under Section 507(a)(8) of the Bankruptcy Code and $4,929.36 in general unsecured tax claims (including a $4,800 penalty). Debtor is analyzing the IRS' claim and reserves the right to dispute said claim.

California Franchise Tax Board Claims. The California Franchise Tax Board ("Franchise Tax Board") filed a proof of claim (Claim No. 4) on November 24, 2020 claiming 10,103.25 in estimated income taxes. The Franchise Tax Board claims $3,507.35 in priority unsecured tax claims under Section 507(a)(8) of the Bankruptcy Code and $6,595.90 in general unsecured tax claims. Debtor is analyzing the Franchise Tax Board's claim and reserves the right to dispute said claim.

Administrative Claims. Debtor retained Shilliday Law, P.C. ("Bankruptcy Counsel") as its bankruptcy counsel and paid a pre-petition retainer of $15,000. The bankruptcy court entered an order on September 15, 2020 approving the employment of Bankruptcy Counsel. Bankruptcy Counsel continues to hold a post-petition retainer approved by the court in the amount of $9,143. Total fees and costs incurred by Bankruptcy Counsel through November 30, 2020 are $7,834.35. Bankruptcy Counsel anticipates it will incur approximately $5,000 in additional fees and costs in connection with plan confirmation, assuming no significant confirmation-related litigation.

The bankruptcy court entered an order on October 9, 2020 approving Debtor's employment of Montgomery, Little & Soran, P.C. ("Litigation Counsel") to represent debtor in the Arbitration Proceeding and the above-referenced Adversary Proceedings. Litigation Counsel does not hold a post-petition retainer. Litigation Counsel through November 30, 2020 has incurred post-petition fees and costs in the amount of $18,386.09. Litigation Counsel may incur significant additional fees and costs exceeding $50,000 in the event the Arbitration Proceedings and Adversary Proceedings proceed through trial. Litigation Counsel, however, has engaged in meaningful settlement discussions with Eliya and the Arbitration Respondents which may obviate the need for trial in the Arbitration Proceedings.

The bankruptcy court on October 21, 2020 also approved Debtor's employment of accountants Nguyen & Associates CPA, Inc. ("Accountants") to perform accounting services on behalf of Debtor. Accountants through November 30, 2020 have incurred on behalf of Debtor post-petition fees and costs of $1,074.

General Unsecured Claims. The IRS and California Franchise Tax Board as set forth above filed proofs of claim including unsecured claims in the amount of $4,929.36 and $6,595.90, respectively. Debtor also scheduled fines and assessments levied by the City of La Quinta, California against the Obregon Property in the amount of $3,200. Debtor shall treat and pay these general unsecured claims described below as Class 9 Claims. The Class 9 Claims are as follows:

| | |
|---|---|
| California Franchise Tax Board | $6,595.90 |
| Internal Revenue Service | $4,929.36 |
| City of La Quinta | $3,200.00 |
| | $11,636.71 |

Madeline Nava ("Nava") in November 2020 executed an agreement with Debtor to purchase the Rubio Property for $340,000. A motion to approve the November 2020 purchase agreement is pending before the court. *See* Docket No. 42. Net proceeds from sale of the Rubio Property are expected to be $318,778.88. Nava filed a proof of claim (Claim No. 3) on November 23, 2020 based upon a February 2018 agreement with Debtor to purchase the Rubio Property. The February 2018 agreement attached as Exhibit 1 to Nava's proof of claim expired by its own terms in January 2020. Debtor takes the position the February 2018 agreement expired, is unenforceable, and in any event is rejected by Debtor. The November 2020 purchase agreement supersedes the expired February 2018 agreement and fully compensates Nava for payments made to Debtor. Nava upon closing of the Rubio sale will have no unsecured claim and Debtor shall object to and not pay Nava as an unsecured creditor.

Insider General Unsecured Claims. Kip Korthuis and his brother Kim Korthuis loaned Debtor funds pre-petition which Debtor also scheduled as unsecured claims. Kip Korthuis and Kim Korthuis are "insiders" under 11 U.S.C. § 101(31)(B)(vi). Debtor shall treat and pay these insider general unsecured claims described below as Class 10 Claims. The Class 10 Claims are as follows:

| | |
|---|---|
| Kim Korthuis | $457,681.23 |
| Kip Korthuis | $240,000.00 |
| | $697,661.23 |

## V. DESIGNATION OF CLAIMS AND INTERESTS

The classes of Claims and Interests provided for in this Plan, other than those Claims of a kind specified in Sections 507(a)(2), 507(a)(3), or 507(a)(8) of the Code, are set forth below:

Class 1- All Allowed Claims specified in Section 507(a)(4) or 507(a)(5) of the Code as having priority.
Class 2- The Allowed Secured Claim held by USA Loans.
Class 3- The Allowed Secured Claim held by Gene Haun.
Class 4- The Allowed Secured Claim held by Beth and Charles Harrison.

<u>Class 5</u>- The Allowed Secured Claim held by Irma Martinez.
<u>Class 6</u>- The Tax Claim held by the City and County of Denver.
<u>Class 7</u>- The Tax Claim held by the IRS.
<u>Class 8</u>- The Tax Claim held by the California Franchise Tax Board.
<u>Class 9</u>- The Allowed Claims held by general unsecured creditors.
<u>Class 10</u>- The Allowed Claims held by Debtor's Insiders.
<u>Class 11</u>- The Allowed Interests held by Kip Korthuis.

## VI. SPECIFICATION AND TREATMENT OF CLAIMS

6.1    <u>Unclassified Claims</u>. Holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code shall receive cash equal to the allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Claims shall be paid in full on the Effective Date of the Plan or treated as otherwise agreed to by the particular holders of such Claims. Section 507(a)(2) Administrative Claims, including professional fees, allowed by the bankruptcy court after the Plan's Effective Date shall be paid upon allowance. Each professional, including the Chapter 11 Trustee, whose employment has been approved by the bankruptcy court shall have thirty (30) days after the Effective Date to file an application for compensation for pre-confirmation services. Failure to timely file such application however will not bar the professional from the right to receive compensation at a later date. As provided in 11 U.S.C. § 1123(a)(1), these Claims are not classified and holders of such Allowed Claims are not entitled to vote on the Plan.

6.2    <u>Class 1 Claims specified in Section 507(a)(4) or 507(a)(5)</u>. Allowed Class 1 Priority Claims shall be paid in full on the Effective Date. The Class 1 Claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and 507(a)(5) of the Code. Debtor does not expect that any claims will exist in this Class.

6.3    <u>Class 2 Claim held by USA Loans</u>. The Class 2 Claim held by USA Loans is impaired under the Plan. The validity and amount of the disputed Class 2 Claim shall be determined by the bankruptcy court in the USA Loans Adversary Proceeding. Debtor shall pay USA Loans $210,020.86 from sale of the Rubio Property upon approval of the November 2020 Purchase Agreement with Nava. The remaining proceeds from sale of the Rubio Property shall be held by Debtor in trust pending resolution of the USA Loans Adversary Proceeding. If proceeds from sale of the Rubio Property are insufficient to pay in full the USA Loans Allowed Secured Clam, Debtor within nine (9) months following settlement of or entry of a Final Order in the USA Loans Adversary Proceeding shall sell the Holly #221, Holly#112, and the Obregon Properties as necessary to pay in full the Class 2 Allowed Secured Claim held by USA Loans. Debtor shall pay any accumulated pre- or post-petition interest on the USA Loans Allowed Secured Claim as set forth in the B2R loan documents.

6.4    <u>Class 3 Claim held by Gene Haun</u>. The Class 3 Claim held by Gene Haun is impaired under the Plan. The Class 3 Claim shall receive nothing under the Plan. Haun

failed to timely file a responsive pleading in the Haun Adversary Proceeding and Debtor has requested entry of a default judgment. Haun's lien against the Rubio Property shall be avoided. Haun also shall receive nothing as a Class 9 general unsecured creditor.

     6.5   <u>Class 4 Claims held by Beth and Charles Harrison</u>. The Class 4 Claims held by Beth and Charles Harrison are impaired under the Plan. The validity and amount of the disputed Class 4 Claims shall be determined by the bankruptcy court in the Harrison Adversary Proceeding. Debtor shall pay the Harrisons their Allowed Secured Claims as determined by the court using proceeds from sale of Debtor's Properties as necessary to pay their Allowed Claims in full upon entry of a Final Order in the Harrison Adversary Proceeding and within nine (9) months following settlement of or entry of a Final Order in the USA Loans Adversary Proceeding. The Allowed Class 4 Claims will be paid in the priority of liens for each Property liquidated under the Plan after payment in full of the Allowed Class 2 Secured Claim held by USA Loans. The Harrisons will receive nothing as Class 9 general unsecured creditors to the extent their liens are avoided in the Harrison Adversary Proceeding.

     6.6   <u>Class 5 Claim held by Irma Martinez</u>. The Class 5 Claim held by Martinez is impaired under the Plan. The validity and amount of the disputed Class 5 Claim shall be determined by the bankruptcy court in the Martinez Adversary Proceeding. Debtor shall pay Martinez her Allowed Secured Claim as determined by the court using proceeds from sale of Debtor's Properties as necessary to pay her Allowed Claim in full upon entry of a Final Order in the Martinez Adversary Proceeding and within nine (9) months following settlement of or entry of a Final Order in the USA Loans Adversary Proceeding. The Allowed Class 5 Claim will be paid in the priority of liens for each Property liquidated under the Plan after payment in full of the Allowed Class 2 Claim held by USA Loans. Martinez shall receive nothing as a Class 9 general unsecured creditor to the extent her liens are avoided in the Martinez Adversary Proceeding.

     6.7   <u>Class 6 Claim held by the City and County of Denver</u>. The Class 6 Tax Claim held by the City and County of Denver is unimpaired by the Plan. Debtor shall pay in full the Class 6 Claim in the amount of $1,970.31 plus statutory interest at the rate of 12% within thirty (30) days following the Effective Date of the Plan.

     6.8   <u>Class 7 Claim held by the IRS</u>. The Class 7 Tax Claim held by the IRS in the amount of $27.56 is impaired by the Plan. Debtor shall pay the Class 7 Claim in the amount of $27.56 plus any applicable statutory interest within nine (9) months following settlement or entry of a Final Order in the USA Loans Adversary Proceeding and upon entry of Final Orders in the Haun, Harrison, and Martinez Adversary Proceedings. The Class 7 Tax Claim shall be paid after payment in full of the Class 2-5 Claims in the amounts determined by the bankruptcy court.

     6.9   <u>Class 8 Claim held by the California Franchise Tax Board</u>. The Class 8 Tax Claim held by the California Franchise Tax Board in the amount of $3,507.35 is impaired by the Plan. Debtor shall pay the Class 8 Tax Claim in the amount of $3,507.35 plus any applicable statutory interest within nine (9) months following settlement or entry of a Final

Order in the USA Loans Adversary Proceeding and upon entry of Final Orders in the Haun, Harrison, and Martinez Adversary Proceedings. The Class 8 Tax Claim shall be paid after payment in full of the Class 2-5 Claims in the amounts determined by the bankruptcy court.

6.10    Class 9 Claims hold by general unsecured creditors. The Class 9 general unsecured Claims held by the IRS, California Franchise Tax Board, and the City of La Quinta collectively in the amount of $11,636.71 are impaired by the Plan. Debtor shall pay the Class 9 Claims in the amount of $11,636.71 within nine (9) months following settlement or entry of a Final Order in the USA Loans Adversary Proceeding and upon entry of Final Orders in the Haun, Harrison, and Martinez Adversary Proceedings. The Class 9 Claim shall be paid after payment in full of the Class 2-8 Claims.

6.11    Class 10 Insider Claims. The Class 10 general unsecured Claims held by Insiders Kip Korthuis and Kim Korthuis ("Insiders") collectively in the amount of $697,661.23 are impaired by the Plan. Class 10 Claims shall receive no payments under the Plan but Debtor's obligations the Insiders shall remain valid and enforceable after the Effective Date of the Plan plus any applicable interest pursuant to the loan documents with each Insider. In the event Debtor is required to liquidate all of its Properties and other assets to satisfy Class 1-9 Claims, the Class 10 Insiders shall receive payments on their Allowed Class 10 Claims only after Class 1-9 Claims have been paid in full. Debtor's remaining obligations to Insiders in such event shall become void and unenforceable.

6.12    Class 11 Interests held by Kip Korthuis. The Class 11 Interests held by Kip Korthuis as sole owner of the membership interests in Debtor is unimpaired by the Plan. On the Effective Date, Kip Korthuis shall retain his 100% membership interests and operate the Debtor as a reorganized entity. Class 11 Interests will not receive any distributions under the Plan unless Classes 1-9 Claims have first been paid in full.

## VII. ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS

7.1    Debtor pursuant to 11 U.S.C. § 365(a) assumes the following executory contracts or unexpired leases:

Holly #112 Lease. Debtor shall assume and continue to perform under that certain residential lease agreement with Rosario Escobedo and Marquis McNeal relating to the Holly #112 Property through expiration of said lease in April 2021 unless otherwise extended by the parties.

Obregon Property. Debtor shall assume and continue to perform under that certain residential month-to-month lease with Samantha Clark and Blake Muscovitch relating to the Obregon Property.

Desert Cities Property Management Agreement. Debtor shall assume and continue to perform under that certain management agreement with Desert Cities Property Management, Inc. relating to management of the Obregon Property.

7.2    Debtor pursuant to 11 U.S.C. § 365(a) shall reject that certain Seller Financing Addendum to Real Estate Purchase Agreement dated February 8, 2018 between Debtor and Nava, attached as Exhibit 1 to Nava's Proof of Claim No. 3, relating to the purchase of the Rubio Property.  The February 2018 Agreement required Nava to close her purchase of the Rubio Property on or before January 1, 2020, which Nava failed to do.  To the extent any further obligation of Debtor exists under the February 2018 Agreement, Debtor hereby rejects such obligations under 11 U.S.C. § 365.  The November 2020 Purchase Agreement for Nava to purchase the Rubio Property (*see* Docket No. 42) in any event novates and supersedes the expired February 2018 Agreement.

## VIII. PLAN CONSUMATION AND DEFAULT

8.1    <u>Means to Fund Plan Payments</u>.  Debtor proposes a liquidation Chapter 11 Plan.  Debtor shall sell the Rubio Property and pay to USA Loans $210,020.86.  Such payment shall constitute adequate protection until resolution of the USA Loans Adversary Proceeding.  Upon resolution of the USA Loans Adversary Proceeding, Debtor shall sell the Holly #221, Holly #112, and Obregon Properties as necessary to pay the allowed USA Loans Claim in full.  Haun defaulted with respect to the Haun Adversary Proceeding and will receive nothing under the Plan.  Debtor believes the liens in favor of the Harrisons and Martinez are fraudulent and subject to avoidance under Section 548 of the Bankruptcy Code but will pay upon resolution of the Harrison and Martinez Adversary Proceedings the Allowed Claims if any in favor of the Harrisons and Martinez.  The value of Debtor's Properties as of the Petition Date is at least $1,095,886.  Debtor will have more than sufficient funds from liquidation of the Properties to pay in full the USA Loans, Harrison, and Martinez Allowed Claims and the Claims in favor of the IRS, Franchise Tax Board, and the City of La Quinta.  The Denver Tax Claim will be paid within thirty (30) days from the Effective Date using Debtor's rental income, subject to approval from USA Loans.  Debtor believes it will recover additional proceeds from Eliya and the Arbitration Respondents to fund the Plan.

8.2    <u>Subchapter V Trustee/Plan Payments/Confirmation.</u>  If this Plan is confirmed pursuant to 11 U.S.C. §1191(a), the Subchapter V trustee's services shall be terminated at such time as the Plan has been substantially consummated.  Not later than fourteen (14) days after the Plan is substantially consummated, Debtor shall file with the bankruptcy court and serve on the Subchapter V Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation.

If the Plan is confirmed pursuant to 11 U.S.C. §1191(b), the Subchapter V Trustee shall continue to serve as trustee, and shall accept Plan payments and convey said payments as provided herein and pursuant to 11 U.S.C. §1194(b).  The Plan complies with 11 U.S.C. § 1129(b)(2)(A) as to Allowed Secured Claims as required by 11 U.S.C. § 1191(b) in that USA Loans, the Harrisons, and Martinez shall retain their security interests in the validity and amounts as determined by the bankruptcy court in the Adversary Proceedings and shall receive payment on their Allowed Secured Claim from liquidation of Debtor's Properties as necessary to pay said Claims in full.

16

8.3    The Plan is Fair and Equitable.  The Plan is "fair and equitable" pursuant to 11 U.S.C. § 1191(c)(2) in that Creditors will receive payment in full on their Allowed Claims following disposition of the Adversary Proceedings from sale of the Properties.

8.4    Default.  Should Debtor fail to timely sell the Properties after disposition of the Adversary Proceedings or timely pay the Allowed Claims, each creditor may exercise their rights under non-bankruptcy law to foreclose upon Debtor's assets as determined under applicable law without further order of the bankruptcy court.

## IX. EXECUTION OF THE PLAN

9.1    Operation of Business.  Debtor shall be empowered to take such actions as may be necessary to perform its obligations under this Plan.  Kip Korthuis will continue to manage Debtor's daily business operations.  Debtor shall fund payments under the Plan through sale of Debtor's Properties as necessary to pay Allowed Claims in full.

9.2    Effectuating the Plan.  On the Effective Date of the Plan, Kip Korthuis shall be appointed pursuant to 11 U.S.C.§1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary to consummating the terms of the Plan, including but not limited to execution of any and all necessary documents.

9.3    Claim Objections, Litigation Bar Date, and Standing.  All Claim objections and Avoidance Actions in the case must be filed no later than thirty (30) days following the Effective Date.  Debtor shall have standing to commence, prosecute, and settle claim objections and avoidance actions without need for court approval.

9.4    Administrative Expense Bar Date.  Applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within thirty (30) days following the Confirmation Date.  Failure to timely seek allowance of such Administrative Claims shall not alone justify denial of such expenses.

9.5    Closing of Case, Discharge, and Final Decree.  Debtor will move to close the case and request entry of a Final Decree pursuant to Fed. R. Bankr. P. 3022 within thirty (30) days following final payment to Creditors under the Plan.  If the Plan is confirmed pursuant to 11 U.S.C. §1191(a), on the Effective Date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of this Plan, to the extent specified in 11 U.S.C. §1141(d).

If the Plan is confirmed under 11 U.S.C. §1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until completion of all payments due under the Plan and the bankruptcy court grants a discharge of all debts provided in 11 U.S.C. § 1141(d) and all other debts allowed under 11 U.S.C. §503 and provided for in the Plan, except that Debtor will not be discharged from any debt on which the last payment is due after the first 3 years of the Plan, or such other time not to exceed 5 years fixed by the Court; or of the kind specified in 11 U.S.C. §523(a).  If confirmed under 1191(b), Debtor is

requesting discharge of all debts under the Plan, even though payments are due after the first 3 years of the Plan.

9.6   Exemption from Transfer Taxes. Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

9.7   Contractual Relationship. The Plan, upon confirmation, constitutes a new contractual relationship by and between Debtor and its secured creditors. In the event of a default by the Debtor under the terms of the Plan, secured creditors shall be entitled to enforce all rights and remedies against Debtor for breach of contract under the Plan in accordance with applicable law. Any secured creditor claiming a breach of the Plan by Debtor will be able to enforce all of their rights and remedies, including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such documents. Any creditor claiming a breach by Debtor must provide written notice to the Debtor of the claimed default and provide Debtor a fifteen (15) day period within which to cure the claimed default. Upon Debtor's failure to cure the default within such fifteen-day period, the creditor may proceed to exercise their rights and remedies.

## X. LIQUIDATION ANALYSIS

10.1   Debtor proposes to liquidate its Properties as necessary to pay Allowed Claims in full. The value of Debtor's scheduled assets including its Properties total $1,102,686.24. Liquidation of such assets will be more than sufficient to pay the Class 2-9 Allowed Claims in full.

## XI. MISCELLANEOUS PROVISIONS

11.1   Revestment. The entry of an Order confirming this Plan shall revest in the Debtor all property of the estate free and clear of all liens except those specifically set forth in the Plan. If the Plan is confirmed under 11 U.S.C. §1191(b) of this title, property of the estate shall also include all property of the kind specified in 11 U.S.C. §541 (including rent and proceeds from sale of the Properties) that Debtor acquires after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, whichever occurs first.

11.2   Retention of Jurisdiction. Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

    a.    Determination of the allowability of Claims upon objection to such Claims by the Debtor-in-Possession or by any other party-in-interest;

    b.    Determination of the request for payment of Claims entitled to priority under 11 U.S.C. § 507(a)(2), including compensation of the parties entitled thereto;

    c.    Resolution of any disputes regarding interpretation of the Plan;

d.     Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

e.     Modification of the Plan pursuant to 11 U.S.C. §1127;

f.     Adjudication of any causes of action, including avoiding powers actions, brought by the Debtor-in-Possession, by the representative of the estate, or by a Trustee appointed pursuant to the Code;

g.     Adjudication of any cause of action brought by the Debtor-in-Possession, Creditors Committee, by a representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in 11 U.S.C. §§ 542-549. This section shall not be construed to limit any other power or right which the Debtor may possess under any section of the Code;

h.     Adjudication of any Allowed Secured Claim under 11 U.S.C. § 506, including a determination pursuant to an evidentiary hearing as to the value of the Property on the Petition Date; and

i.     Entry of a Final Decree.

11.3    <u>Treatment and Satisfaction of Claims</u>.  Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan.  Any obligation or note, previously in default, so modified, shall be cured as modified as of the Confirmation Date.  This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.4    <u>Headings</u>.  The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan.

11.5    <u>Notices</u>.  All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party to be notified.    All communications will be deemed delivered when received at the following addresses:

Kip Korthuis
Peak Property Group, LLC
2 Adams Street, #205
Denver, Colorado 80206
Tel: (970) 215-2683
Email: kipk251@gmail.com

With a copy to:
Robert J. Shilliday III, Esq.
730 17th Street, Suite 340
Denver, Colorado 80202
Tel: (720) 439-2500
Email: rjs@shillidaylaw.com

To

an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, or at the address for the claimant listed in the Debtor's Schedules filed with the Court.

11.6   <u>Successors and Assigns</u>.  The Plan will be binding upon the Debtor, any creditor affected by the Plan and its heirs, successors, assigns, and legal representatives.

11.7   <u>Unclaimed Payments</u>.  If a person or entity entitled to receive a payment or distribution pursuant to this Plan fails to negotiate a check, accept a distribution, or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 11.5, within one (1) year of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

11.8   <u>Maintenance of Records</u>.  The Debtor shall maintain until the Plan is con summated in full, or until the case is converted or dismissed, an accounting of any payments made to Class 4 unsecured creditors during the term of the Plan.  The accounting records shall be made available during the term of the Plan to any party-in-interest as agreed between the Debtor and the requesting party.  The accounting records shall be made available by the Debtor at its place of business or such other location reasonably selected by the Debtor.

### XII. CONFIRMATION REQUEST

Debtor, as proponent of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. § 1191(a).  In the event Debtor does not obtain the necessary acceptances of the Plan, Debtor may request that the bankruptcy court nevertheless confirm the Plan pursuant to 11 U.S.C. §11191(b).  Debtor believes the Plan is the best alternative to repay creditors in full and should be accepted by the creditors entitled to vote or approved by the court.

DATED: December 14, 2020

Peak Property Group, LLC
By: Kip Korthuis

Robert J. Shilliday III, Esq.
730 17th Street, Suite 340
Denver, CO 80202
Telephone: (720) 439-2500
Facsimile: (720) 439-2501
Email: rjs@shillidaylaw.com

ATTORNEY FOR PEAK PROPERTY GROUP, LLC, DEBTOR AND DEBTOR-IN-POSSESSION